**Peter Paul MITRANO**

v.

**Matthan HOUSER.**

Court of Appeals of Tennessee,
at Nashville.

Assigned on Briefs April 2, 2007.

May 16, 2007.

Permission to Appeal Denied by
Supreme Court Sept. 17, 2007.

Peter Paul Mitrano, Merrifield, Virginia, pro se Appellant.

Michael R. Giaimo, Livingston, Tennessee, for the Appellee, Matthan Houser.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

The trial court dismissed this action for unpaid rent pursuant to the *res judicata* doctrine, holding that all claims and issues raised by the complaint were or could have been previously litigated in the New Hampshire court system and were resolved in the Defendant tenant's favor. The trial court also granted the Defendant's motion for sanctions under Tenn. R. Civ. P. 11 and ordered the Plaintiff to pay $1,500 of Defendant's attorney's fees. We hold that under applicable New Hampshire law, the judgment entered by a New Hampshire Superior Court dismissing Plaintiff's previous action for unpaid rent against the same Defendant because of Plaintiff's repeated discovery abuses and flagrant disregard of court orders is a judgment on the merits for purposes of the *res judicata* doctrine. We therefore affirm the trial court's dismissal of this action. However, because we find that the procedural "safe harbor" provisions of Tenn. R. Civ. P. 11.03 were not complied with in this case, we reverse the trial court's award of attorney's fees as sanctions.

### I. Background

Peter Paul Mitrano brought this *pro se*[1] action against Matthan Houser, one of several tenants under a residential lease agreement for the rental of a house in Hanover, New Hampshire. Mr. Houser answered, alleging as an affirmative defense that Mr. Mitrano's claims had already been litigated to his detriment in New Hampshire, and that the court previously hearing his claims had found the lease at issue to be illegal and invalid under New Hampshire law. Mr. Houser further alleged that the New Hampshire court had ruled that Mr. Mitrano violated the implied covenants of habitability and of quiet enjoyment, as well as the New Hampshire Consumer Protection Act. Mr. Houser argued that the doctrines of *res judicata* and collateral estoppel precluded Mr. Mitrano's claims in the present action, and they should be dismissed.

Mr. Houser filed a motion styled "Motion to Dismiss and For Sanctions" along with his answer. Attached to his motion, among other things, were copies of two orders of the Superior Court of Grafton County, New Hampshire in a prior lawsuit where Mr. Mitrano sued several tenants, including Mr. Houser, for unpaid rent under the same lease as is involved in this case. Because the findings of the New Hampshire court provide important background to the present action and the court's rulings are germane to the *res judicata* issue presented here, we reproduce the New Hampshire court's order at some length in pertinent part as follows:

The plaintiff [Mr. Mitrano] prays the Court to grant his Motion to Continue ..., claiming that he is a practicing attorney involved in complex litigation that requires his attention in other jurisdictions. He also seeks to reschedule the taking of his deposition for the same reason. The defendants object to rescheduling the plaintiff's deposition, on the grounds that three previous extensions have already been granted since the date for the deposition was agreed [upon] in open court on December 6, 2002. The defendants contend that [Mr. Mitrano's] consistent failure to appear for his deposition continues a pattern of flagrant disregard of court orders that has characterized [his] behavior in this case since its commencement before this Court. The Court agrees. The plaintiff's Motion to Continue is DENIED. The defendants' Motion for Entry of Judgment is GRANTED.

\* \* \*

The defendants also counterclaimed that [Mr. Mitrano]:

(1) Knowingly and willingly leased his property, 6 Stevens Road, Hanover, to eight Dartmouth students, the three defendants and five others, on April 14, 2001, in violation of ... the Town of Hanover Zoning Ordinance which strictly limits the rental of non-owner-occupied dwelling units to three unrelated persons.

(2) Obtained one copy of the lease with all, or most, of the eight signatures, and a second copy of the lease with only three signatures. It is the second copy of the lease that [Mr. Mitrano] attached to his Small Claim Complaint filed in Lebanon District Court.

(3) Refused to accept the defendants' response to the Zoning Administrator's October 22, 2001 letter, from which the defendants had first learned of the zoning violation, and refused to accept the

---

1. Mr. Mitrano states in his complaint that he is an attorney admitted to the bar of several jurisdictions, but not in Tennessee.

defendants' notification that they intended to vacate the property as of December 31, 2001, due to the violation of the Zoning Ordinance and the illegality of the lease.

(4) Sued the defendants for the December 2001 rent despite the fraudulent lease and the fact that the defendants had already paid the last month of rent as a security deposit before they were allowed to enter the property.

(5) Rented 6 Stevens Road to the defendants when it failed to meet the minimum standards for health and safety set forth in RSA 48-A and local codes and ordinances, in that it was rat and fungi infested, without functional fire alarms, plumbing, water, electrical wires or adequate plaster on the walls.

(6) Neglected and failed to respond to repeated requests for specific repairs from defendants and their parents in August, September, October and November of 2001.

To support their allegations, the defendants requested the following discovery from [Mr. Mitrano]: [listing requested documents].

In an Order dated March 28, 2002 . . . this Court GRANTED the defendants' Motion to Compel these documents. On June 19, 2002, the Court found the plaintiff in contempt for not having complied with the March 28, 2002 Court Order, awarded attorney's fees and costs to the defendants for having to file repeated Motions for Contempt, and ordered the production of all documents on or before July 1, 2002 . . . The Court subsequently received no fewer than six Motions to Extend Time for [Mr. Mitrano] to comply with the Court's June 19, 2002 Order. The Court denied the sixth Motion to Extend Time on September 3, 2002. In between the Motions to Extend Time were repeated Motions from [Mr. Mitrano] to Strike and to Dismiss.

In their first Motion for Entry of Judgment against [Mr. Mitrano] . . . the defendants cite the repeated and continuing discovery violations as reason for the sanction. This was reiterated in a Renewed Motion for Entry of Judgment on October 12, 2002, which came before the Court for a hearing on December 6, 2002. Though the Court at that time declined to order the sanction of an entry of judgment, the Court ruled:

"[Mr. Mitrano's] delay in providing reasonably necessary discovery materials to the defendants in this matter is inexcusable and the product of neglect. [Mr. Mitrano's] initial disregard of and protracted delay in compliance with legitimate discovery orders in this case demonstrates bad faith."

The Court awarded the defendants attorney's fees and costs. It was at this hearing that the date of January 6, 2003, was agreed on between the parties and the Court for [Mr. Mitrano's] deposition. The deposition, at [Mr. Mitrano's] request, was rescheduled for February 10, 2003; March 19, 2003; and April 11, 2003. [Mr. Mitrano] did not show up at the April 11, 2003 date, and instead filed a Motion to Reschedule the Deposition and Continue Trial on April 10, 2002. The defendants countered with the Second Renewal for Entry of Judgment against [Mr. Mitrano] and a Motion to Attach.

* * *

The Court rules that [Mr. Mitrano] has abused the process of litigation by repeated discovery violations. Despite clear and repeated orders from this Court to comply with discovery requests, and generous grants from the Court on Motions to Extend, [Mr. Mitra-

no] has refused to cooperate in any way. In fact, [he] has used the court system, designed to ensure due process to litigants, to procrastinate, delay and obfuscate the causes of justice. When the resources of the court have been mistreated in this fashion, an entry of judgment is an appropriate sanction . . .

Notice was given and a hearing held to ensure due process to [Mr. Mitrano] prior to this entry of judgment against him . . . The defendants' Renewed Motion for Entry of Judgment against [Mr. Mitrano] is GRANTED. Judgment against [Mr. Mitrano] on [his] writ and for the defendants on their counterclaim.

After entry of this order, the New Hampshire court conducted a hearing to determine the appropriate amount of damages on the tenants' counterclaim. Mr. Mitrano was present at the hearing, and both sides were given opportunity to present arguments and supporting proof. The New Hampshire court then entered an order making the following factual findings and conclusions after considering the proof presented:

This matter is before the Court on defendants' request for an assessment of damages. A hearing was held on December 12, 2003 . . . The plaintiff and cross-defendant, Peter Paul Mitrano, appeared pro se . . . The hearing proceeded by offers of proof.

* * *

The Court finds that the defendants are entitled to actual damages incurred as the result of the plaintiff Mitrano's willful breach of the covenant of quiet enjoyment in violation of RSA 540–A:2.

* * *

Thus, the civil remedies available under the New Hampshire Consumer Protection Act, RSA 358–A:10, are applicable here, where the Court has entered judgment against plaintiff Mitrano on the defendants' counterclaim for breach of quiet enjoyment under RSA 540–A:2. RSA 358–A:10 provides for actual damages, and if the court finds that the act or practice was a willful or knowing violation, "it shall award as much as 3 times, but not less than 2 times, such amount."

* * *

For a breach of implied habitability, which the defendants' counterclaim provides for, the measure of tenant's damages is the difference between the agreed rent and the fair rental value of the premises as they were during their occupancy by the tenant in the unsafe, unsanitary or unfit condition.

The Court finds and rules that the defendants are entitled to actual damages in this case. The offer of proof on their counterclaim is that the actual rent charged was $2,900.00 per month. Further, the fair rental value of the premises during the occupancy of the defendants was $1,800 per month. The defendants were in the residence seven months. Each of the three named defendants in this case (other tenants were not parties to this action), paid $362.52 of their pro rata share of the rent per month. The difference between the agreed upon rent value and the fair rental value is $2,887.00[.]

The defendants also requested damages for increased rent and storage expenses incurred by the defendants when forced to vacate the property five months prior to the expiration of the agreed upon lease term. The offer of proof by the defendants fails to support this claim for damages. . . .

* * *

The offers of proof establish that the conduct of Mitrano in leasing the subject property to the Dartmouth students was done in bad faith. It is clear that the number of students in this apartment exceeded the permitted rental unit occupancy levels established by the Town of Hanover. The offer of proof established that Mitrano clearly was aware of the number of people in the unit. The Court finds and rules that the conduct of Mitrano does warrant the application of the [statutory] multiplier [of actual damages]. Accordingly, the Court adds to the actual damages found a multiplier of three.

[Internal quotation marks and citations omitted]. In addition to damages as found above, the New Hampshire court awarded the defendants attorney's fees in the amount of $29,318.83. The Supreme Court of New Hampshire affirmed the lower court's decision in a one-sentence opinion. Mr. Mitrano's petition for certiorari to the United States Supreme Court was denied, *Mitrano v. Houser*, 545 U.S. 1104, 125 S.Ct. 2547, 162 L.Ed.2d 275 (June 6, 2005), and thus the New Hampshire court's ruling became final.

Subsequently, Mr. Mitrano filed this action seeking unpaid rent under the same lease in the Circuit Court for Overton County, Tennessee. The trial court granted Mr. Houser's motion to dismiss, finding that "the issues and claims made by the Plaintiff in his complaint were previously litigated or could have been litigated in the New Hampshire court system." The trial court further found that Mr. Mitrano's action needlessly subjected Mr. Houser to additional legal fees and costs and that Rule 11 sanctions against Mr. Mitrano were appropriate. The trial court awarded Mr. Houser $1,500 in attorney's fees.

## II. Issues Presented

Mr. Mitrano appeals, raising the following issues for our review:

1. Whether the trial court erred in dismissing the action under the *res judicata* doctrine.

2. Whether the trial court erred in awarding Rule 11 sanctions against him.

## III. Standard of Review

■ In support of his motion to dismiss, Mr. Houser filed ten exhibits, including copies of the New Hampshire Superior Court orders and other documents pertinent to Mr. Mitrano's earlier action against Mr. Houser. Because these are matters outside the pleadings that were considered by the trial court, we must treat the motion to dismiss as one filed pursuant to Tenn. R. Civ. P. 56, *i.e.*, as a motion for summary judgment. *See* Tenn. R. Civ. P. 12.02 ("If . . . matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."); *Hart v. Joseph Decosimo & Co., LLP*, 145 S.W.3d 67, 71 (Tenn.Ct.App.2004).

Summary judgment is appropriate only when the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The burden of proof rests with the moving party, who must establish that its motion satisfies these requirements. *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). If the moving party makes a properly supported motion, the burden shifts to the nonmoving party to establish the existence of disputed material facts. *Id.* (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn.1993)). The nonmoving party may not simply rely upon the pleadings, but must instead set forth specific facts, by

affidavits or other discovery materials, demonstrating the existence of a genuine issue of material fact for trial. *Byrd*, 847 S.W.2d at 211. The Supreme Court has emphasized that "genuine issue" in this context "refers to genuine factual issues and does not include issues involving legal conclusions to be drawn from the facts." *Id.* (citing *Price v. Mercury Supply Co.*, 682 S.W.2d 924, 929 (Tenn.Ct.App.1984)).

The standards governing the assessment of evidence in the summary judgment context are well established. Courts must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997); *Byrd*, 847 S.W.2d at 210–11. Summary judgment is appropriate only when the facts and the inferences to be drawn from the facts permit a reasonable person to reach one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

■ Because a trial court's decision to grant a motion for summary judgment is solely a matter of law, it is not entitled to a presumption of correctness. *See Staples*, 15 S.W.3d at 88; *Carvell*, 900 S.W.2d at 26. Consequently, our task is to review the record to determine if the requirements of Rule 56.04 of the Tennessee Rules of Civil Procedure have been met. *Staples*, 15 S.W.3d at 88.

### IV. Analysis

#### A. Res Judicata Doctrine

■ The trial court ruled that Mr. Mitrano's action must be dismissed under the doctrine of *res judicata*, which "bars a second suit between the same parties on the same cause of action with respect to all the issues which were or could have been brought in a former suit." *Barnett v. Milan Seating Systems*, 215 S.W.3d 828, 834–35 (Tenn.2007). In *Barnett*, our Supreme Court recently set forth the elements that must be shown by a party defending on the basis of *res judicata* as follows:

A plaintiff may not, by disclaiming or failing to present a particular fact or theory, preserve such fact or theory to be used as a ground for a second suit. *McKinney v. Widner*, 746 S.W.2d 699 (Tenn.App.1987). The doctrine of collateral estoppel bars the same parties or their privies from relitigating in a second suit issues that were actually litigated and determined in a former suit. *Dickerson v. Godfrey*, 825 S.W.2d 692, 694 (Tenn.1992). This doctrine does not apply to issues that were not necessary for the decision in the former case, *Scales v. Scales*, 564 S.W.2d 667, 670 (Tenn.App.1977), or when the party against whom the preclusion is sought did not have a full and fair opportunity to litigate the issue in the prior suit. *Morris v. Esmark Apparel, Inc.*, 832 S.W.2d 563, 566 (Tenn.App.1991). One defending on the basis of res judicata or collateral estoppel must demonstrate that (1) the judgment in the prior case was final and concluded the rights of the party against whom the defense is asserted, and (2) both cases involved the same parties, the same cause of action, or identical issues. *Scales v. Scales*, 564 S.W.2d 667, 670 (Tenn.App.1977).

*Id.* at 835.

As a preliminary matter, Mr. Mitrano argues that the trial court erred in granting the motion to dismiss because "it was not the proper method to present the defense of *res judicata*," citing the case of *Usrey v. Lewis*, 553 S.W.2d 612 (Tenn.Ct. App.1977) for the proposition that "the proper method to present the defense of res judicata is by a *pleading* (answer) and

not by a motion." *Usrey*, 553 S.W.2d at 614 (emphasis in original). This argument is without merit for at least two reasons. First, the *Usrey* court did not find reversible error in the granting of the *Usrey* defendant's motion to dismiss; the court simply stated that "[t]he defendants' 'Motion to Dismiss on Plea of Res Adjudicata' will therefore be considered to be an answer presenting the affirmative defense of res judicata and a motion for summary judgment for defendant." *Id.* Secondly, even a cursory examination of Mr. Houser's answer reveals that he did properly present the defense of *res judicata*.

▇▇ Mr. Mitrano argues in his brief that "the law of the State of New Hampshire, not the law of the State of Tennessee, dictates whether or not the doctrine of issue preclusion[2] precludes this instant action from proceeding." We agree. This court has frequently stated that "the full faith and credit clause requires that the common law doctrine of *res judicata* be applied in one state to a judgment rendered in another state to the same extent that it applied in the state of its rendition." *First State Bank of Holly Springs, Mississippi v. Wyssbrod*, 124 S.W.3d 566, 573 (Tenn.Ct.App.2003); *Longphre v. Longphre*, No. E2006–00323–COA–R3–CV, 2007 WL 1214965, at *4 (Tenn.Ct.App.E.S., Apr. 25, 2007); *Atchley v. Atchley*, 585 S.W.2d 614, 616 (Tenn.Ct.App.1978).

Mr. Mitrano argues that the New Hampshire court's dismissal of his action as a result of his repeated discovery violations, unwarranted dilatory tactics, and flagrant disregard of the court's orders was a default judgment that did not constitute a conclusion "on the merits," and thus should not be given *res judicata* effect. But the New Hampshire Supreme Court directly addressed this issue in the case of *Barton v. Barton*, 125 N.H. 433, 480 A.2d 199 (1984), and concluded that "a default judgment entered for failure of a party to comply with the superior court discovery rules constitutes a judgment on the merits and, thus, we hold that a second suit alleging the same cause of action is barred by the doctrine of *res judicata*." *Barton*, 480 A.2d at 200; *see also Donovan v. Canobie Lake Park Corp.*, 127 N.H. 762, 508 A.2d 1043, 1044 (1986). The *Barton* decision compels the conclusion that the earlier New Hampshire default judgment against Mr. Mitrano carries *res judicata* effect and precludes this action.

Finally, Mr. Mitrano argues that his present claims are for rent payments under the lease that were not due at the time of his first action, but have become due since then. Therefore, the argument goes, his claims for the later rent payments should not be barred because they could not have been presented earlier. This argument overlooks the fact that the New Hampshire court, after hearing and considering proof presented by both sides, ruled that Mr. Mitrano willfully violated the Consumer Protection Act by renting a house to eight unrelated tenants when the legal limit was three tenants, and that he willfully breached the implied covenants of habitability and of quiet enjoyment. These rulings are established *res judicata*, and result in the conclusion that Mr. Mitrano is precluded from again returning to court to make another claim for unpaid rent pursuant to a lease that has effectively been ruled illegal and unenforceable.

---

**2.** Throughout his brief, Mr. Mitrano uses the terms *"res judicata,"* "collateral estoppel," and "issue preclusion" interchangeably, as though they were synonymous. Although the legal doctrines of *res judicata* and collateral estoppel are closely related, they are clearly distinct from one another and not synonymous. *See, e.g., Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995).

We therefore find no error in the trial court's dismissal of Mr. Mitrano's action under the *res judicata* doctrine.

### B. Rule 11 Sanctions

■ We now turn to the issue of the sanctions imposed under Tenn. R. Civ. P. 11. Rule 11.03 contains specific procedural requirements which provide in relevant part as follows:

> If, after notice and a reasonable opportunity to respond, the court determines that subdivision 11.02 has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision 11.02 or are responsible for the violation.
>
> (1) How Initiated.
>
> (a) By Motion. *A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision 11.02. It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.* If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.

[Emphasis added]. The italicized portion of the above rule is known as the 21–day "safe harbor" provision. It serves the important dual role of providing attorneys notice and fair warning that an adversary is proposing seeking sanctions, and acting as a deterrent to frivolous, unsupported, or otherwise improper pleadings being filed with the court in the first place. Mr.

Mitrano argues that Mr. Houser did not comply with the procedural requirements of Rule 11, including the safe harbor provision, and therefore the sanctions imposed by the trial court should be reversed.

In the present case, the motion for sanctions was not made separately, but included in Mr. Houser's "Motion to Dismiss and for Sanctions." Further, a copy of the motion was not served upon Mr. Mitrano as provided in Tenn. R. Civ. P. 5. Instead, Mr. Houser, through counsel, sent Mr. Mitrano a letter stating, "[t]his letter is being sent pursuant to the safe harbor provisions of Rule 11 of the *Tennessee Rules of Civil Procedure*. Failure to dismiss this action and subsequent involuntary dismissal could lead the court to issue sanctions."

■ The procedures set forth in Rule 11.03 are clearly and unambiguously written, and are couched in mandatory terms. The rule provides, among other things, that "[a] motion for sanctions under this rule *shall* be made separately from other motions or requests," and "*shall* be served as provided in Rule 5" (emphasis added). Attorneys and litigants should be able to place their expectation and reliance upon the fact that Rule 11 means what it says, and that a party will not be sanctioned unless his or her opponent has followed the procedure for requesting sanctions as set forth in the rule. *See Elliott v. Akey*, No. E2004–01478–COA–R3–CV, 2005 WL 975510, at *4–5 (Tenn.Ct.App.E.S., Apr. 27, 2005); *McGahey v. McGahey*, No. W2003–01051–COA–R3–CV, 2003 WL 22272350, at *5–6 (Tenn.Ct.App.W.S., Oct. 1, 2003). Because the record does not show that Mr. Houser complied with the safe harbor requirement of Rule 11.03(1)(a), we reverse the order of sanctions against Mr. Mitrano.

### V. Conclusion

For the aforementioned reasons, the judgment of the trial court dismissing Mr.

Mitrano's action is affirmed. The judgment of the trial court granting Mr. Houser sanctions of $1,500 in attorney's fees pursuant to Rule 11 is reversed. Mr. Houser argues that this appeal is frivolous and requests attorney's fees. Exercising our discretion, we decline to find this appeal frivolous. Costs on appeal are assessed to the Appellant, Peter Paul Mitrano.