IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 4, 2011

# JENNIFER PITTS BRADFORD v. DAVID WILSON PITTS

**Appeal from the Chancery Court for Cumberland County**
**No. 8973803     Hon. Ronald Thurman, Chancellor**

**No. E2011-01025-COA-R3-CV-FILED-JANUARY 31, 2012**

This is the second appeal of this post-divorce case in which David Wilson Pitts ("Father") petitioned for suspension or termination of his child support obligation owed to Jennifer Pitts Bradford ("Mother"). The trial court denied Father's request, holding that Father failed to prove that a substantial variance in his income was present. Father appealed, and this court directed the trial court to consider Father's tax return in determining whether a substantial variance existed. On remand, the trial court found that a substantial variance existed between Father's income at the time of the divorce as reflected in the tax return and his income at the time of the request for suspension or termination. The trial court modified Father's support obligation and imposed sanctions against Mother. Mother appeals. We reverse the trial court's imposition of sanctions against Mother but affirm the decision of the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Jennifer Pitts Bradford, Lexington, Kentucky, Pro Se.

Eric J. Morrison and M. Todd Riley, Knoxville, Tennessee, for the appellee, David Wilson Pitts.

## OPINION

## I. BACKGROUND

Mother and Father were divorced in 2004, at which time they agreed to a residential sharing schedule pertaining to their four children. Father was ordered to pay child support in the amount of $4,600 per month based upon an income of $10,000 per month using the flat percentage guidelines in effect at the time of the divorce.

In 2007, Father petitioned for suspension or termination of child support, alleging that he had a medical condition that affected his ability to work and that he was unable to pay child support until he either returned to work or received disability insurance. In an order dated November 21, 2008, the court found that Father's income was $9,876 per month, reflecting Father's disability insurance. The court stayed Father's child support from the time of the filing of the petition and ordered Father to pay child support "at the rate of $1,596.00 per month," starting in December 2008. The court calculated this amount using a child support worksheet based upon the Income Shares Guidelines ("Guidelines") after finding that Mother earned "an annual income of $14,000.00 which [was] equal to $1,167.00 per month." The court noted that Father was "paying medical insurance on behalf of the children in the amount of $1,822.00 per month" and that Mother "indicated that she may be able to obtain insurance at a cheaper rate." The court permitted Mother "to obtain [the cheaper] insurance" and ordered Father to "reimburse her for the amount of th[e] insurance."

Mother filed a motion to alter or amend the court's order. Following a hearing on the motion, the court entered an order on September 25, 2009, which provided

> that at the time of the divorce, [Father's] income exceeded $10,000 per month net. It appears that the $10,000 per month child support amount was the end of the [flat percentage guidelines] at the time. There are no worksheets in the court file to determine what the parties did or what they agreed to during mediation. There was no proof presented to the [c]ourt at the time of the divorce as to the actual income of the parties at that time. However, the parties agreed in the divorce mediation to set the child support based on [Father's] earnings of $10,000 per month net income. Therefore, the [c]ourt finds that there has not been a significant variance that would justify a modification.

The court also found

> that the income tax records the parties filed in 2004 show[] that the parties had an income in excess of $10,000 per month. If the [c]ourt were allowed to look behind the order of the [c]ourt entered in 2004, and allowed to make a finding based on the actual income of the parties at that time, the [c]ourt would have found that there was a significant variance.

The court reinstated Father's child support to $4,600.00 per month, and Father appealed.

On appeal, this court reviewed the issue and stated,

> the amount of child support agreed upon at the time of the divorce did not establish that [F]ather's net income was no more than $10,000.00 per month. Since the record does not establish his actual net income at the time of the divorce, the only way to determine what [F]ather's net income was, would be to admit evidence on his actual income at the time of the divorce.

*Bradford v. Pitts*, No. E2009-02206-COA-R3-CV, 2010 WL 4400099, at *2 (Tenn. Ct. App. Nov. 5, 2010). Analyzing a similar case, this court ultimately held that it was proper to review Father's tax returns in determining his actual income at the time of the divorce. *Id.* at *3. In so holding, this court reversed the trial court and remanded the case for a hearing in which the trial court was instructed to "determine [Father's] actual income at the time of the divorce in 2004 and determine whether there is a necessary variance in [Father's] income to modify the child support obligation." *Id.*

On remand, the court, using Father's tax return that was filed in 2004, found Father's actual income "at the time of the divorce in 2004 to be that set forth in his 2003 Income Tax Return of $243,163.00 annually or $20,263.58 per month." In so finding, the court held that there was a

> necessary variance in [Father's] income from the time of the divorce in 2004, to the time of the filing of his Petition to Suspend or Terminate Child Support on August 7, 2007 and that modification of [Father's] child support obligation is appropriate to $1,596.00 as previously set forth by this [c]ourt in the [o]rder dated November 21, 2008.

The court directed Mother to pay a portion of Father's attorney fees and imposed sanctions against Mother pursuant to Rule 11 of the Tennessee Rules of Civil Procedure. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issues before us on appeal as follows:

A. Whether the trial court had jurisdiction to enter an order modifying child support when the petition had been dismissed.

B. Whether the trial court should have released jurisdiction to Kentucky for resolution of the issues pertaining to child custody.

C. Whether the trial court erred in modifying Father's child support following remand from this court.

D. Whether either party should have been sanctioned by the trial court.

E. Whether either party was entitled to an award of attorney fees.

## III.  STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

"[D]ecisions regarding child support must be made within the strictures of the Child Support Guidelines." *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). However, we still review child support decisions "using the deferential abuse of discretion standard" because these decisions "retain an element of discretion." *Id.* In matters of child support that are within the trial court's discretion, the court "will be found to have abused its discretion when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Id.*

## IV.  DISCUSSION

### A.

Citing *Hodge v. Hodge*, No. M2006-01742-COA-R3-CV, 2007 WL 3202769 (Tenn. Ct. App. Oct. 31, 2007), Mother asserts that all orders relating to Father's petition for suspension or termination of child support were void because the petition was dismissed prior to the court's ruling on the matter. A review of the technical record reveals that shortly after Father filed his petition for suspension or termination of child support, he filed a motion to

-4-

dismiss the petition. This motion was granted on October 8, 2007. Approximately two weeks later, Father filed a motion to set aside the order of dismissal, asserting that his motion to dismiss erroneously requested dismissal of the petition when he intended to request dismissal of a motion relating to custody. The trial court set aside the order of dismissal and reinstated the petition to suspend or terminate child support. Thus, all subsequent orders relating to the petition were entered with jurisdiction and were valid because Father properly brought the issue before the court. *Id.* at \*4 (stating that once a judgment becomes final, "the jurisdiction of the trial court remain[s] at rest until called into action by one of the parties") *see also* Tenn. Code Ann. § 36-5-101(g)(1) (providing that "[u]pon application of either party, the court shall decree an increase or decrease of support when there is found to be a significant variance, as defined in the child support guidelines"). This issue is without merit.

B.

Mother argues that the trial court should have released jurisdiction of the issues pertaining to child custody to Kentucky, the state where both parties and the children have resided for the past three years. Father responds that pursuant to an agreement resolving the custody issues, Mother dismissed all motions relating to the court's jurisdiction, thereby waiving any right to raise the issue on appeal. Father notes that the court did not adjudicate the custodial jurisdiction issue because the motion had been dismissed. A review of the technical record reveals that Father is correct. In the court's final order, the court stated,

> In light of the parties reaching an agreement for co-parenting time as reflected in the memorandum of understanding, [Father] withdrew his Motion for Contempt for Willfully Refusing to Allow Co-Parenting Time with Children. Thereafter, [Mother] announced that as a result of the withdrawal of the Motion for Contempt against her, that her motion for Jury Trial and multiple motions regarding jurisdiction (Motion to Release Jurisdiction and Rule 60 Motion to Dismiss Father's Motion to Compel Mediation and Contempt for Willfully Refusing to Allow Co-Parenting Time) were moot and were therefore being withdrawn.

Accordingly, we conclude that this issue is without merit.

C.

Mother asserts that the trial court erred in modifying Father's child support obligation upon remand from this court. Father asserts that the trial court's modification was supported by the record.

-5-

In child support modification cases held after the effective date of the Guidelines, the trial court must utilize the Guidelines in determining whether modification is appropriate regardless of "whether the action was pending before the effective date or filed after the effective date." Tenn. Comp. R. & Regs. 1240-02-04-.05(1). A child support order is only eligible for modification if a significant variance exists. Tenn. Comp. R. & Regs. 1240-02-04-.05(2)(a). For child support orders that were established or modified before January 18, 2005, the Guidelines define a significant variance as:

> 1. At least a fifteen percent (15%) change in the gross income of the ARP; [and]
>
> * * *
>
> 5. At least a fifteen percent (15%) change between the amount of the current support order and the proposed amount of the obligor parent's pro rata share of the BCSO if the current support is one hundred dollars ($100) or greater per month and at least fifteen dollars ($15) if the current support is less than one hundred dollars ($100) per month; . . . .

Tenn. Comp. R. & Regs. 1240-02-04-.05(2)(b). "If the current child support order was calculated using the flat percentage guidelines, [the court must] compare the existing ordered amount of current child support to the proposed amount of the [requesting party's] basic child support obligation." Tenn. Comp. R. & Regs. 1240-02-04-.05(3). If a significant variance exists between the current order and the proposed amount, "such a variance would [generally] justify the modification of a child support order." Tenn. Comp. R. & Regs. 1240-02-04-.05(3).

The record reflects that Father's gross income at the time of the divorce, as reflected in his 2003 tax return that was filed in 2004, was $20,263.58 per month. At the time of the hearing on the petition for suspension or termination of child support, Father's income was $9,876 per month. The difference in Father's income in 2004 and his present income was $10,387.58, which reflected a change relative to income that was more than the required significant variance of 15 percent. The difference in the current support order and the proposed amount was $3,004, which reflected a change relative to support that was more than the required significant variance of 15 percent. Accordingly, we conclude that the trial court did not err in determining that a significant variance existed. Having reviewed the child support worksheet entered on November 21, 2008, we further conclude that the court did not err in determining the amount of support owed based upon that variance.

However, this conclusion does not end our inquiry because Mother raised a number of other issues relating to the court's modification of support. In the first appeal, this court directed the trial court to consider Father's actual income at the time of the divorce in determining whether a significant variance relative to income existed. Mother asserts that the trial court should have merely considered Father's presumptive income of $10,000 in 2004 and his present income of $9,876. Mother argues that "it is unjust to apply income that was not subject to child support to determine [whether a] significant variance exists." We acknowledge that at the time of the divorce, Father's income in excess of $10,000 was not considered when setting the amount of support owed. However, we believe that Father's actual income at the time of the divorce was "subject to child support" because the flat percentage guidelines in effect provided

> that "[i]f the net income of the obligor . . . exceeds [$10,000.00] per month, then the custodial parent must prove by a preponderance of the evidence that child support in excess of the amount, [calculated by multiplying the appropriate percentage . . . by a net income of ten thousand dollars ($10,000.00) per month], is reasonably necessary to provide for the needs of the minor child or children for whom support is being determined in the case specifically under consideration."

*Bradford*, 2010 WL 4400099, at *2 (quoting Tenn. Comp. R. & Reg. 1240-2-4-.04(3)(c) (Dec.2003)).

Moreover, in determining whether modification of support is appropriate, the amount of support agreed upon at the time of the divorce is not the only issue the court must consider. The Guidelines also direct courts to consider the *change* in the obligor parent's gross income. Tenn. Comp. R. & Regs. 1240-02-04-.05(2)(b). This direction is illustrative of the fact that unlike the flat percentage guidelines, the Guidelines consider each parent's ability to provide. While an obligor parent may have been able to submit a certain amount of support at the time of the divorce, that parent's circumstances may change. Therefore, consideration of an obligor parent's change in gross income is relevant. This court directed the trial court to consider Father's tax returns because a tax return is generally the best evidence of a parent's gross income at the time of the divorce. *Bradford*, 2010 WL 4400099, at *3. Citing *Abercrombie v. Abercrombie*, No. E2003-01226-COA-R3-CV, 2004 WL 626713 (March 29, 2004), Mother maintains that use of a tax return to ascertain actual income is misleading. We recognize that the concept of "adjusted gross income" used for purposes of a federal income tax return is "vastly different" from the concept of "gross income" used for purposes of calculating child support pursuant to the Guidelines. *Abercrombie*, 2004 WL 626713, at *7. In *Abercrombie*, the mother's income was largely

based upon non-employment sources. Thus, her adjusted gross income did not reflect her actual income. This case does not present the same problem because Father's gross income was not derived from non-employment sources but was based upon his medical practice. We believe that consideration of Father's tax return was the "best evidence" of his actual income in this case. *Bradford*, 2010 WL 4400099, at *3.

Mother raises a myriad of other issues in an attempt to attack the trial court's modification of support. She asserts that the court simply reinstated the 2008 order instead of issuing a new order and that the court should have applied the hardship rule in setting Father's new support obligation. She also contends that the court erred in releasing the appeal bond after ruling in Father's favor. Following an extensive review of the record, we hold that these issues are pretermitted given our conclusion that the trial court did not err in modifying Father's child support obligation.

Mother's final argument on the issue of modification is that the court should not have considered Father's petition for modification because he had unilaterally reduced his support obligation, accumulating an arrears balance prior to the court's modification. *See* Tenn. Code Ann. § 36-5-101(g)(3) ("The court shall not refuse to consider a modification of a prior order and decree as it relates to future payments of child support because the party is in arrears under that order and decree, unless the arrearage is a result of intentional action by the party."). A review of the record reveals that Mother did not raise this issue at trial or prior to the initial appeal. A party may not offer a new issue for the first time on appeal. *See Lane v. Becker*, 334 S.W.3d 756, 764 (Tenn. Ct. App. 2010) (citing *Campbell County Bd. of Educ v. Brownlee-Kesterson, Inc.*, 677 S.W.2d 457, 467 (Tenn. Ct. App. 1984)). Regardless of any potential waiver, Father's unilateral reduction of child support was not intentional but was the result of his loss of income. *See Simmons v. Simmons*, No. W1999-01393-COA-R3-CV, 2000 WL 34223927, at *2 (Tenn. Ct. App. Oct. 10, 2000). Thus, the trial court did not err in considering the petition, despite any arrearage.

D.

Mother argues that the trial court improperly sanctioned her after finding that two of her motions were entered in violation of Rule 11 of the Tennessee Rules of Civil Procedure. Mother notes that Father's motion for sanctions was not properly before the court because his motion was never set for a hearing. Mother also contends that the court never ruled on her motion for sanctions against Father. Father responds that the court's imposition of sanctions against Mother was appropriate.

The motions at issue were entitled, "Motion to Vacate Child Support Order Entered on 11-21-2008" ("Motion 1") and "Significant Variance Supplement" ("Motion 2"). Motion 1 sought to reverse the November 21, 2008 order that was ultimately set aside by the trial court. Mother alleged that Father "entered misleading pleadings, motions, and orders" when requesting suspension or termination of Father's child support obligation and that the final order was entered with "inaccurate and unverified data" that conflicted with the Guidelines. She further alleged that her attorney was "obstructed from presenting the evidence" to the trial court and the appellate court. Motion 2 called this court's opinion into doubt and asked the trial court to reinstate Father's child support obligation as originally ordered at the time of the divorce.

After receiving these motions, Father presented Mother with a letter and motion for sanctions, requesting Mother to withdraw numerous motions that he believed were "improper, harassing and frivolous under Sections (1) and (2) of Rule 11.02 of the Tennessee Rules of Civil Procedure." In his motion, he specifically identified Motions 1 and 2 and informed Mother that he would file his motion for sanctions if she did not withdraw the offending motions. Mother responded by filing a response with the court and her own motion for sanctions, alleging that Father improperly filed a motion for sanctions and failed to provide the requisite 21-day "notice prior to filing pursuant to Rule 11." Father then filed his motion for sanctions with the court.

In the final order, the court ruled upon the motion for sanctions by stating,

> With regard to [Father's] Motion for Sanctions Pursuant to Tenn. R. Civ. P. 11, this [c]ourt finds that [Mother's] filing of her Motion to Vacate Child Support Order Entered November 21, 2008 Reinstating the Original Child Support Order Entered August 10, 2004 and the Significant Variance Supplement are in violation of Tenn. R. Civ. P. 11, that [Mother] is hereby sanctioned in the amount of $1,500.00 and that [Father] shall be awarded a Judgment for said amount of $1,500.00.

On appeal, a trial court's decision to impose sanctions pursuant to Rule 11 is reviewed under an abuse of discretion standard. *Brown v. Shappley*, 290 S.W.3d 197, 200 (Tenn. Ct. App. 2008). This court's "review of Rule 11 decisions is governed under this deferential standard since the question of whether a Rule 11 violation has occurred requires the trial court to make highly fact-intensive determinations regarding the reasonableness of the [party's] conduct." *Id.* This court is to "apply a standard of 'objective reasonableness under

the circumstances' when determining whether conduct is sanctionable under Rule 11." *Id.* at 202 (citing *Hooker v. Sundquist*, 107 S.W.3d 532, 536 (Tenn. Ct. App. 2002)). In considering whether sanctions are appropriate, the court must determine "whether such conduct was reasonable at the time the document was signed." *Marra v. Bank of New York*, 310 S.W.3d 329, 341 (Tenn. Ct. App. 2009).

Rule 11.02 of the Tennessee Rules of Civil Procedure provides,

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denial of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

The requesting party must make a motion for sanctions "separately from other motions or requests" and "must describe the specific conduct alleged to violate subdivision 11.02." Tenn. R. Civ. P. 11.03(1)(a). Additionally, a motion for sanctions must be served "as provided in Rule 5" but must not be "filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or

appropriated corrected." Tenn. R. Civ. P. 11.03(1)(a). A trial court is authorized to impose sanctions "[i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision 11.02 has been violated." Tenn. R. Civ. P. 11.03.

The record reflects that Father failed to comply with what is known as the 21-day safe harbor provision provided for in Rule 11.03 of the Tennessee Rules of Civil Procedure. *See Mitrano v. Houser*, 240 S.W.3d 854, 862 (Tenn. Ct. App. 2007). The 21-day safe harbor provision "serves the important dual role of providing [parties] notice and fair warning that an adversary is proposing seeking sanctions, and acting as a deterrent to frivolous, unsupported, or otherwise improper pleadings being filed with the court in the first place." *Id.* In this case, Father hand delivered a letter with the attached motion on February 23, 2011, and the motion for sanctions was filed with the court on March 7, 2011. A review of the record reveals that Father intended to file the motion on the same day that he hand delivered the letter and motion to Mother; however, he sent the motion for sanctions to the wrong address. Father alleged in the motion that he failed to comply with the 21-day safe harbor provision because the court directed all motions to be filed by February 28, 2011. Father asserted that he would withdraw his motion for sanctions if Mother withdrew the offending motions.

While we sympathize with Father's position, the "procedures set forth in Rule 11.03 are clearly and unambiguously written, and are couched in mandatory terms." *Id.* Father should have requested an extension that would have allowed him to comply with the 21-day safe harbor provision. "Attorneys and litigants should be able to place their expectation and reliance upon the fact that Rule 11 means what it says, and that a party will not be sanctioned unless his or her opponent has followed the procedure for requesting sanctions as set forth in the rule." *Id.* Accordingly, we reverse the order of sanctions because the record does not show that Father complied with Rule 11.03(1)(a) of the Tennessee Rules of Civil Procedure. Relative to Mother's claim that the court never ruled on her motion for sanctions, we believe that the trial court's grant of Father's motion for sanctions was an implicit denial of Mother's motion. We affirm the court's denial of Mother's motion for sanctions.

E.

Mother asserts that she was entitled to attorney fees for her defense of the child support order at trial and on appeal. Mother also contends that the trial court erroneously ordered her to pay a portion of Father's attorney fees. Father asserts that he, not Mother, is entitled to attorney fees on appeal because her appeal was frivolous. Mother disagrees, responding that her appeal was not frivolous.

The prevailing party may recover "reasonable attorney fees incurred in enforcing any decree for . . . child support." Tenn. Code Ann. § 36-5-103(c). Awards of attorney fees in child support modification cases are made "in the discretion of [the] court." Tenn. Code Ann. § 36-5-103(c); *see also Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001). While Mother was the prevailing party following the court's reversal of its original order, Mother was not the prevailing party at trial following remand or in this appeal. "A party who prevails in the trial court but loses on appeal is no longer the prevailing party." *Donald F. Bradford v. James W. Sell*, No. E2008-02424-COA-R3-CV, 2009 WL 3103814, at *7 (Tenn. Ct. App. Sept. 29, 2009) (citing *Progressive Casualty Ins. Co. v. Chapin*, 243 S.W.3d 553, 562 (Tenn. Ct. App. 2007)). Accordingly, we uphold the trial court's denial of attorney fees as to Mother and conclude that the trial court did not abuse its discretion in awarding a partial amount of attorney fees to Father.

Relative to the requested award of attorney fees on appeal, Tennessee Code Annotated section 27-1-122 provides for an award of sanctions in the form of attorney fees when an appeal is determined to be frivolous. To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues. *See Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). An appellate court's decision on this issue is discretionary, and this court is generally reluctant to award such damages because we do not want to discourage legitimate appeals. *Whalum v. Marshall*, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006). Exercising our discretion, we respectfully deny Father's request to award attorney fees on appeal in this case.

## V. CONCLUSION

The judgment of the trial court is affirmed in part, as to the trial court modifying Father's child support obligation, the denial of Mother's motion for sanctions, the denial of attorney fees as to Mother, and the awarding a partial amount of attorney fees to Father. The judgment of the trial court is reversed in part, as to the order of sanctions against Mother. This case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Jennifer Pitts Bradford.

_____
JOHN W. McCLARTY, JUDGE