IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 5, 2017 Session

## IN RE ESTATE OF JAMES KEMMLER ROGERS

Appeal from the Chancery Court for Giles County
No. P-1070-14     Stella Hargrove, Judge

_____

No. M2017-00602-COA-R3-CV
_____

This probate action is before this Court on appeal for the second time. Following remand from this Court subsequent to the first appeal, the trial court determined that the petitioner did have standing to file her petition for probate as a "purported creditor" of the decedent. The trial court ultimately denied the petition, however, finding "no basis for either primary or ancillary probate in Tennessee." The trial court had also previously awarded sanctions against the petitioner and her counsel pursuant to Tennessee Rule of Civil Procedure 11. The petitioner has appealed. Discerning no error in the trial court's denials of both primary and ancillary probate, we affirm such determinations. Although we also affirm the trial court's imposition of Rule 11 sanctions against the petitioner and her counsel generally, we vacate the specific award granted against the petitioner personally and remand such issue to the trial court for a determination of the proper amount of sanctions to be awarded against the petitioner solely pursuant to Rule 11.02(1). We affirm the trial court's judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

John A. Beam, III, and Irene R. Haude, Nashville, Tennessee, for the appellant, Patricia Porter Kryder.

Andra J. Hedrick, Nashville, Tennessee, for the appellees, James Schneider Rogers and Jennifer Rogers-Etcheverry.

**OPINION**

**I. Factual and Procedural Background**

The factual and procedural history of this case previous to the first appeal is explained as follows by this Court's opinion in *In re Estate of Rogers*, No. M2015-01439-COA-R3-CV, 2016 WL 6087662, at *1 (Tenn. Ct. App. Oct. 17, 2016) ("*Rogers I*"):

James Kemmler Rogers ("Decedent") died on June 11, 2014 in Bakersfield, California. Decedent was survived by two adult children, James Schneider Rogers and Jennifer Rogers-Etcheverry (together, "Appellees"). Decedent was employed in the cattle business, and he moved quite frequently. In approximately 2007, Decedent began residing on a small portion of Appellant Patricia Porter Kryder's farm in Tennessee. Ms. Kryder is an attorney, who is licensed in Tennessee. In lieu of rent, Decedent and Ms. Kryder agreed that Decedent would provide handyman-like duties.

On May 18, 2012, Decedent was injured in an automobile accident. It is alleged that, prior to the accident, Decedent had discussed, with family and friends, the possibility of moving back to California. Shortly after the accident, Decedent moved back to California to be near his family. There is dispute between the parties as to whether Decedent ever regained his mental faculties after the accident and whether his move to California was voluntary. There is evidence that Decedent was active after he moved to California, i.e., swimming, eating out, and carrying on business. After moving to California, Decedent did not maintain any cable or phone services in Tennessee, nor did he vote here. Decedent had no property in Tennessee at the time of his death. Decedent's estate was admitted to probate in Kern County, California on or about June 11, 2014. Ms. Rogers-Etcheverry was named the administrator of the estate.

On November 7, 2014, Appellant filed a petition to probate Decedent's estate in the Chancery Court for Giles County, wherein she alleged that she was a "creditor of the estate." On December 3, 2014, Appellant filed an amendment to the petition to include a copy of the Decedent's will, which was executed in Texas. On December 15, 2014, Appellees filed a "Notice of Filing," with which they tendered certified copies of an order of probate and letters of special administration that had been issued in connection with the probate of Decedent's estate in Kern

County, California. On December 18, 2014, Appellees filed a response as interested persons to the petition to probate, contesting probate in Tennessee.

The trial court heard the petition to probate on December 30, 2014 and January 15, 2015. On February 6, 2015, Appellees filed a motion for discretionary costs. On February 10, 2015, Ms. Kryder filed a request for findings of fact and conclusions of law. On February 10, 2015, the trial court entered a "Final Judgment and Order," which denied Appellant's petition to probate. Specifically, the trial court found that, "at the time of his death . . . , James Kemmler Rogers . . . resided in and was domiciled in California." The court found that there was no basis for either primary or ancillary probate in Tennessee. On February 13, 2015, the trial court entered an order granting Appellees' motion for discretionary costs in the amount of $4,777.41.

On March 9, 2015, Appellant filed a renewed petition for ancillary probate. As a ground for her petition, Ms. Kryder cited the 2012 "California Nonresident or Part-Year Resident Income Tax Return," which Decedent allegedly executed and filed. The document, Ms. Kryder argued, evidenced Decedent's intent to remain domiciled in Tennessee, although he was a resident of California.

After notice and time to cure, on June 8, 2015, Appellees filed a motion for Rule 11 sanctions against Ms. Kryder or her firm. Therein, Appellees alleged, *inter alia,* that Ms. Kryder had failed to pay the discretionary costs as ordered by the trial court. In addition, Appellees alleged that Ms. Kryder had engaged in "delay tactic[s]" by filing extraneous motions and memoranda in support of ancillary probate after the trial court had orally ruled that its order of February 10, 2015 was correct.

On June 12, 2015, Appellees filed a reply and supplemental memorandum in response to Ms. Kryder's renewed motion for ancillary probate. In this response, Appellees specifically raised the issue of whether Ms. Kryder had standing to pursue ancillary probate of Decedent's estate in Tennessee, *see* discussion *infra*.

On July 1, 2015, Ms. Kryder filed a response to Appellees' request for Rule 11 sanctions and request for her attorney's fees and costs. In her response, Ms. Kryder argued that her post-judgment filings were filed to bring

to the court's attention . . . that the [February 10, 2015] order failed to make findings on required elements of proof (overt acts of the decedent in furtherance of intent to abandon Tennessee and adopt California), failed to establish who had the burden of proof at trial, made findings of intent by negative inference that are clearly inconsistent with the written statements of the decedent found in [the Nonresident California tax return), and made findings inconsistent with the substantial weight of the evidence on the issue of the decedent's recovery from the car wreck.

On July 7, 2015, Ms. Kryder filed a cross-petition for Rule 11 sanctions against Appellees.

The trial court heard Ms. Kryder's renewed petition for ancillary probate on June 12, 2015, *see* discussion *infra*. On July 14, 2015, the trial court entered an order denying Ms. Kryder's petition. Therein, the trial court found that Ms. Kryder had failed to present new evidence so as to necessitate rehearing; however, the trial court did not specifically rule on the standing argument that was raised by Appellees in their response to Ms. Kryder's petition for ancillary probate. On the same day, the trial court entered a separate order denying Ms. Kryder's request for the court to make additional findings of fact and conclusions of law. Ms. Kryder filed a notice of appeal on July 30, 2015.

On September 11, 2015, the trial court heard the cross-motions for Rule 11 sanctions. By order of September 21, 2015, the trial court denied Ms. Kryder's Rule 11 motion, but granted Appellees' [motion]. The court found "that all pleadings filed [on Ms. Kryder's behalf] after the hearing on February 13, 2015 . . . [were] improperly filed to harass, to cause unnecessary delay, and to increase the cost of litigation." In a "Final Judgment," which was entered on October 30, 2015, the trial court awarded Appellees $5,311.85 in discretionary costs and $34,705.61 in damages under Rule 11. In its October 30, 2015 order, the trial court states: "This is a final judgment that resolves all claims and issues in this case and is a final order pursuant to Tenn. R. Civ. P. 54, from which an appeal may be taken." Following entry of this order, Ms. Kryder filed a supplemental notice of appeal on October 6, 2015. Thereafter, on November 24, 2015, Appellees filed a motion to alter or amend the final judgment. In their motion, Appellees asked the trial court to amend its judgment to reflect Ms.

Kryder's alias, Patricia K. Gainer. By order of December 8, 2015, this Court remanded the case to the trial court (noting that this Court might not have attained jurisdiction under Tennessee Rule of Appellate Procedure 3 in the absence of a ruling on Appellees' motion to alter or amend). On remand, the trial court entered an order on February 12, 2016, granting Appellees' motion and amending its judgment to also include Ms. Kryder's alias.

*Id*. at *1-2. Following a determination that no valid final judgment had been entered by the trial court because the standing issue had never been adjudicated, this Court dismissed the appeal and remanded the matter to the trial court for further proceedings. *Id*. at *6.

Following remand and additional briefing by the parties, the trial court determined by order dated December 9, 2016, that Ms. Kryder maintained standing to file her petition for probate as a "purported creditor" of Mr. Rogers ("Decedent"). As the trial court explained:

Ms. Kryder does meet the minimum requirements of constitutional standing in order to present a justiciable controversy under *ACLU of Tenn. v. Darnell*, 195 S.W.3d 612, 620 (Tenn. 2006) and *City of Chattanooga v. Davis*, 54 S.W.3d 248, 280 (Tenn. 2001). She claims a distinct injury caused by Decedent's conduct; her pleadings demonstrate a causal connection between an alleged injury and the alleged conduct of Decedent; and the alleged injury is capable of being redressed by a favorable decision of the district court.[1]

The trial court ultimately denied the petition for probate, however, concluding that there was "no basis for either primary or ancillary probate in Tennessee." The court determined that Decedent had moved to California and was domiciled there at the time of his death. The court noted that there was no evidence that Decedent "carried on any business or pursued any activity whatsoever in Tennessee, social or otherwise." The court further noted that Decedent owned no property in Tennessee and that his estate was admitted to probate in California.

This Court subsequently issued mandate as to the first appeal on January 12, 2017, and Ms. Kryder filed a motion seeking entry of a final, appealable order by the trial court. Decedent's two children (collectively, "the Heirs") thereafter sought an award of

---

[1] The record reflects that Ms. Kryder had, prior to Decedent's death, filed a lawsuit against Decedent in Tennessee seeking to recover damages for his use of and damage to her real property. Ms. Etcheverry, acting as Decedent's attorney-in-fact, had the case removed to federal district court in Tennessee. Following Decedent's death, Decedent's estate was substituted as a party defendant.

additional fees and expenses.  The trial court entered an order on February 27, 2017, reaffirming its earlier ruling regarding standing.  The court concomitantly entered an order denying the Heirs' request for supplemental fees and expenses.

On March 8, 2017, Ms. Kryder filed a notice of appeal from the order denying her petition for probate.  The trial court subsequently entered an order on March 10, 2017, awarding supplemental fees and expenses to the Heirs in the amount of $18,860, for the period of October 3, 2015, to January 27, 2017.

## II.  Issues Presented

Ms. Kryder presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by declining to find that Decedent's prior domicile in Tennessee created a presumption of domicile in Tennessee, which would have required the Heirs to prove that Decedent abandoned his Tennessee domicile when he moved to California.

   A. Whether the Heirs failed to demonstrate that Decedent abandoned his Tennessee domicile because Decedent committed no overt act in furtherance of his intent to abandon Tennessee and adopt California as his domicile.

   B. Whether Decedent's 2012 Nonresident California income tax return constitutes proof of his intent to maintain his Tennessee domicile.

   C. Whether the trial court erred by finding that Decedent intended to make California his domicile simply because Decedent did not return to Tennessee.

2. Whether the trial court erred by impliedly finding that Decedent made a sufficient recovery following his automobile accident to allow him to form intent to change his domicile from Tennessee to California.

3.    Whether the trial court abused its discretion in declining to exercise jurisdiction over the petition for ancillary probate based on the circumstances of this case.

4.    Whether the trial court erred in granting the Heirs' motion for Tennessee Rule of Civil Procedure 11 sanctions against Ms. Kryder and her counsel.

5.    Whether the trial court erred by finding that "safe harbor" notice had been provided to Ms. Haude, as co-counsel for Ms. Kryder, when she was not involved in drafting the allegedly frivolous pleadings.

6.    Whether the trial court erred by denying Ms. Kryder's motion for Tennessee Rule of Civil Procedure 11 sanctions against the Heirs.

The Heirs raise additional issues, which we have also restated slightly:

7.    Whether the trial court erred in its determination that Ms. Kryder maintained standing to file her petition.

8.    Whether this appeal is frivolous such that the Heirs should receive an award of attorney's fees and expenses.

## III.  Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006).

With regard to discretionary decisions made by a trial court, our Supreme Court has explained:

The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable

7

alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d [22,] 42 [(Tenn. 2005)].

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of

correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010).

## IV.  Standing

As a threshold matter, the Heirs argue that the trial court erroneously determined that Ms. Kryder had standing to file her petition for probate.  The trial court found that Ms. Kryder was "before this court as a purported creditor of the decedent" and that she met "the minimum requirements of constitutional standing in order to present a justiciable controversy."  The Heirs assert that Ms. Kryder never filed a creditor claim against Decedent's estate and that the time for filing such claims expired on June 12, 2015, one year after Decedent's death.  *See, e.g.,* Tenn. Code Ann. § 30-2-307(d) (Supp. 2017) ("The clerk shall return any claim . . . received more than twelve (12) months from the decedent's date of death"); Tenn. Code Ann. § 30-2-310(a) (2015) ("All claims and demands not filed with the probate court clerk . . . or, if later, in which suit has not been brought or revived before the end of twelve (12) months from the date of death of the decedent, shall be forever barred.").  The Heirs contend that filing a petition to open an estate is not the equivalent of filing a creditor's claim and that the time for filing a creditor's claim has now passed.

Ms. Kryder asserts that Tennessee law specifically provides that a creditor can apply for probate of a debtor's estate.  *See* Tenn. Code Ann. § 30-1-106 (2015) ("If neither the spouse nor next of kin make application for administration, then administration shall be granted to a creditor proving the decedent's debt on oath before the probate court . . . .").  However, we determine Ms. Kryder's reliance on Tennessee Code Annotated § 30-1-106 to be misplaced.  Tennessee Code Annotated § 30-1-106 expressly provides for the preference in granting letters of administration "[w]hen any person <u>dies intestate in this state</u>" (emphasis added).  We note that Decedent was neither intestate nor did he die in this state.

At trial, Ms. Kryder also relied on two alternative statutory provisions in her quest for probate:  Tennessee Code Annotated § 32-2-101 regarding original probate of a will belonging to a Tennessee resident, and Tennessee Code Annotated § 30-1-103 regarding ancillary probate for a nonresident decedent's estate.[2]  In relying upon Tennessee Code

---

[2] Tennessee Code Annotated § 32-2-101 (2015) provides:

> Wills shall be proved and recorded and letters testamentary granted in the probate court of the county where the testator had the testator's usual residence at the time of the

Annotated § 32-2-101, Ms. Kryder claimed that Decedent had executed a will and that he remained domiciled in Tennessee at the time of his death. Concerning Tennessee Code Annotated § 30-1-103, Ms. Kryder argued that she was an alleged debtor of Decedent pursuant to a counter-claim filed in the federal court action and, further, that the estate was interested in that lawsuit, which was pending in federal court in Tennessee.

As this Court has previously elucidated, "standing is a judge-made doctrine used to determine whether a particular plaintiff is entitled to judicial relief." *See Suntrust Bank, Nashville v. Johnson*, 46 S.W.3d 216, 222 (Tenn. Ct. App. 2000). "It requires the court to determine whether the plaintiff has a sufficiently personal stake in the outcome of the controversy to warrant a judicial resolution of the dispute." *Id*. In order to establish standing, a plaintiff is required to show that: (1) she sustained a distinct and palpable injury, (2) the injury was caused by the challenged conduct, and (3) the injury is one that can be addressed by a remedy the court is empowered to give. *See id.* Thus, when determining whether a party has standing, the focus of the inquiry is on the party "to determine whether the party has a sufficient personal stake in the proceedings . . . ." *See In re Estate of Price*, No. M2002-00332-COA-R3-CV, 2002 WL 31890885, at *2 (Tenn. Ct. App. Dec. 31, 2002). This requires "careful judicial examination of a complaint's allegation to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 56 (Tenn. Ct. App. 2004). The likelihood that a plaintiff's claim will be successful has no bearing on the plaintiff's standing. *See In re Estate of Price*, 2002 WL 31890885, at *2.

---

testator's death, or, in case the testator had fixed places of residence in more than one county, in either or any of those counties.

Tennessee Code Annotated § 30-1-103 (2015) states:

(a) Letters testamentary or of administration may be granted upon the estate of a person who resided, at the time of the person's death, in some other state or territory of the union, or in a foreign country, by the probate court of any county in this state:

(1) Where the deceased had any goods, chattels, or assets, or any estate, real or personal, at the time of the person's death, or where the goods, chattels, assets, or estate may be when the letters are applied for;

(2) Where any debtor of the deceased resides;

(3) Where any debtor of a debtor of the deceased resides, the debt being unpaid when the application is made; or

(4) Where any suit is to be brought, prosecuted, or defended, in which the estate is interested.

In her original petition seeking probate of Decedent's estate and appointment of an administrator, Ms. Kryder asserted that Decedent possessed a last will and testament that he had executed in Tennessee. Ms. Kryder also asserted that Decedent remained domiciled in Tennessee at the time of his death. Moreover, Ms. Kryder claimed to have sustained an injury by virtue of Decedent's use of and damage to Ms. Kryder's real property, which was the subject of a pending claim in federal court in Tennessee. Therefore, as the trial court found, Ms. Kryder alleged in her petition that (1) she sustained a distinct injury, (2) the injury was caused by the challenged conduct, and (3) the injury could be addressed by a remedy the court was empowered to give. *See Suntrust Bank,* 46 S.W.3d at 222. *See also* Tenn. Code Ann. § 32-2-101. As previously explained, the court was only required to examine the allegations of the petition "to ascertain whether the particular plaintiff [was] entitled to an adjudication of the particular claims asserted," without regard to Ms. Kryder's likelihood of success in the pursuit of her claims. *See City of Brentwood*, 149 S.W.3d at 56. We accordingly conclude that the trial court properly determined that Ms. Kryder had met the minimum requirements to establish standing. We will now proceed to a determination regarding the issues raised on appeal.

## V. State of Domicile and Original Probate Pursuant to Tennessee Code Annotated § 32-2-101

Tennessee Code Annotated § 32-2-101 provides for the original probate of a will belonging to a Tennessee resident. Therefore, the majority of the remaining issues raised by Ms. Kryder focus on whether the trial court properly determined that California was Decedent's domicile at the time of his death, meaning that the requirement of domicile in Tennessee pursuant to Tennessee Code Annotated § 32-2-101 was not satisfied. Ms. Kryder argues that Decedent's previously established domicile in Tennessee created a presumption that Tennessee continued as Decedent's state of domicile, requiring the Heirs to prove that Decedent intended to abandon Tennessee and instead adopt California as his state of domicile.

Ms. Kryder focuses in part on a 2012 California Nonresident or Part-Year Resident Income Tax Return filed by Decedent as proof that he maintained his domicile in Tennessee. Ms. Kryder further contends that the trial court erred by finding that Decedent intended to make California his domicile simply because he failed to return to Tennessee. Ms. Kryder argues that Decedent was taken to California by his daughter "like it or not" and that Decedent never took any overt action to establish domicile in California, such as obtaining a driver's license or insurance, voting, or obtaining a California gun carry permit. Ms. Kryder further argues that Decedent never made a full recovery from his accident and thus lacked the ability to form the intent to change his domicile.

11

The trial court found that Decedent lived in California voluntarily and with no issue of mental incompetence for the first year. As the court stated, "During this time the Decedent was out and about, his usual fun-loving self, and enjoyed being with friends and attending events." The court noted that until Decedent became incompetent on or around July 2013, he "had the mental and physical ability to return to Tennessee if he had desired to do so." The court further explained:

> If the Decedent had truly wished to return to Tennessee, he was able and would have found a way to return to Tennessee. However, he did not desire to return to Tennessee. Rather, the Decedent intended to, and did, abandon Tennessee as his state of domicile. The Decedent did not intend to, and did not, return to Tennessee.

Following our thorough review of the proof presented in this matter, we agree with the trial court's findings and conclusions.

The testimony established that Decedent moved to Tennessee in approximately 2000. During the years he resided in Tennessee, Decedent registered his automobile in this state, purchased automobile and renter's insurance, subscribed to satellite television service, obtained a Tennessee gun carry permit, and voted in Tennessee. Decedent's two children resided in California, and the proof demonstrated that Decedent would travel to California for visits on occasion while his children also traveled to Tennessee for visits. Decedent was an avid equestrian, who enjoyed playing polo and also served as an umpire for polo matches. Decedent's friends and neighbors in Tennessee testified that Decedent loved to ride horses but had experienced more difficulty doing so in recent years as a result of two hip replacement surgeries. Decedent's daughter, Ms. Etcheverry, testified that when Decedent visited her and her family in California during the 2011 Christmas holiday season, she accompanied him to look at potential residences in the area near her home. A close friend of Decedent, Jennifer Walker, testified that Decedent had a conversation with her in the spring of 2012 about moving to California. Ms. Walker related that Decedent told her he wished to live closer to his children. Other friends of Decedent testified similarly regarding Decedent's intent to return to California to live.

Decedent was involved in a serious car accident in Tennessee on May 19, 2012, leaving him with significant physical injuries. Ms. Etcheverry explained that Decedent required twenty-four-hour care following the accident and could not be released from the hospital to live alone. Ms. Etcheverry also related that she, her brother, and Decedent discussed Decedent's recovery options and determined that Decedent would reside with Ms. Etcheverry at her home in California. According to Ms. Etcheverry, Decedent

12

subsequently moved into a bedroom in her home, and she cared for him. The Heirs arranged for Decedent's possessions to be brought to California.

Ms. Etcheverry testified that Decedent experienced a tremendous recovery from his injuries and was able to enjoy activities, such as walking his dog, swimming, and traveling. She also explained that Decedent participated in demanding physical therapy sessions, rendering him exhausted but affording him the ability to perform most of the activities he desired. According to Ms. Etcheverry and her brother, Mr. Rogers, Decedent made his own decisions and was free to go where he pleased and do what he wanted. They each indicated that Decedent never spoke of returning to Tennessee.

Ms. Etcheverry testified that immediately after moving to California, Decedent requested she take him to a local bank so that he could establish a bank account, into which he arranged for his social security checks to be directly deposited. Decedent personally handled changing the address on his personal bills and other mail, securing new health insurance, and locating local physicians. Ms. Etcheverry testified that Decedent also personally dealt with the filing of his income tax returns, which included the 2012 California Nonresident or Part-Year Resident Income Tax Return, as well as a 2013 California Resident Income Tax Return. According to Ms. Etcheverry, Decedent continued to serve on the Will Rogers Memorial Commission Board and made four or five trips to Oklahoma to attend meetings.[3] Decedent also took vacations to visit his sister and his son.

Several of Decedent's friends from Tennessee testified that they had spoken to Decedent by telephone following his move to California. Kerry and Tony Lott both related that Decedent elaborated upon his various activities in California, further stating that Decedent discussed visiting but not returning to Tennessee to reside. Ms. Walker reported that Decedent seemed happy in California and did not express a desire to return to Tennessee. Furthermore, Jean Johnson testified that during her frequent conversations with Decedent following his move, he appeared active and never expressed displeasure about being there.

The Heirs also presented depositions taken of Decedent's friends from other states, all of whom acknowledged that Decedent had discussed moving to California to be near his family prior to his accident. One such witness, Rob Beard, testified that before the accident, Decedent experienced certain physical issues preventing him from playing polo. Moreover, Decedent expressed that he was "lonesome" in Tennessee. Mr. Beard and the other witnesses explained that Decedent was happy living in California following his accident and that he expressed no desire to move back to Tennessee.

---

[3] Will Rogers was Decedent's grandfather.

Ms. Etcheverry and Mr. Rogers observed that Decedent experienced a decline in his mental abilities and physical health during approximately the last six months of his life. Ms. Johnson likewise testified that she never observed any cognitive diminishment in Decedent until he had resided in California for about a year. Similarly, Ms. Etcheverry's former neighbor, Steven Struwe, testified that although Decedent was mentally competent for the first year following his move to California, he began to decline during the second year, such that Ms. Etcheverry occasionally asked Mr. Struwe to stay with Decedent if she had to be out of town. All of the witnesses agreed that before that time, Decedent had been lucid and appeared to be, in the words of Ms. Walker, his "normal, chit-chat self." Ultimately, Decedent transitioned to an assisted living facility in March 2014 and passed away in June 2014. Ms. Etcheverry subsequently located a last will and testament that Decedent had executed when he lived in Texas. She filed the instrument for probate in California. Ms. Etcheverry and Mr. Rogers each respectively confirmed that they had never seen a will executed in Tennessee.

Based upon all evidence presented, we conclude that the Heirs sufficiently demonstrated that Decedent intended to abandon Tennessee and adopt California as his state of domicile. As this Court has previously explained:

> At any given time, a person may have more than one residence but may have only one domicile or legal residence. *Bearman v. Camatsos*, 215 Tenn. 231, 385 S.W.2d 91, 93 (1964). A person cannot acquire a new domicile or legal residence without first abandoning another. *McElhaney v. Chipman*, 647 S.W.2d 643, 644 (Tenn. Ct. App. 1982). To change domicile or legal residence, a person must: (1) actually change his or her residence to a new place; (2) intend to abandon his or her old domicile; and (3) intend to establish a new domicile at the new residence. *Denny v. Sumner County*, 134 Tenn. 468, 184 S.W. 14, 16 (1916).

*In re Conservatorship of Ackerman*, 280 S.W.3d 206, 210 (Tenn. Ct. App. 2008).

The evidence demonstrated that Decedent moved to California following his car accident in order to reside with his daughter, who could assist with his physical care. Prior to his accident, however, Decedent had already expressed an interest in returning to California to live near his children and had investigated potential homes there. Upon his relocation to California in June 2014, Decedent immediately established a bank account at a local bank, found local physicians, changed his address with regard to monthly bills and other mail, and changed his health insurance. Decedent also filed a state tax return as a resident of California in 2013. Ergo, Decedent's actions established his intent to abandon his prior Tennessee domicile and establish his domicile in California. Decedent

14

maintained no property in Tennessee after moving to California and expressed no desire to return to live in Tennessee.[4] Therefore, the evidence presented clearly established that Decedent intended to change not only his residence, but also his actual domicile, to the state of California.

Ms. Kryder asserts that the 2012 California Nonresident or Part-Year Resident Income Tax Return filed by Decedent constitutes proof that he maintained his domicile in Tennessee. Despite Ms. Kryder's assertions to the contrary, this document does little more than demonstrate that Decedent had only lived in California for part of the year, having moved in June 2012. The sole assertion contained in this tax return was a line stating: "I was a nonresident of California the entire year (enter state or country of residence)," for which Decedent inserted "Tennessee." This assertion is consistent with the fact that Decedent had resided approximately six months in Tennessee and six months in California in 2012. Moreover, Ms. Etcheverry proffered a copy of Decedent's 2013 California Resident Income Tax Return, which clearly maintained that he was a California resident in 2013. Thus, we do not find the 2012 California Nonresident or Part-Year Resident Income Tax Return to be determinative regarding the issue of Decedent's domicile.

Finally, Ms. Kryder argues that the trial court erred by assuming that Decedent made a sufficient recovery following his automobile accident such that he had the ability to form the requisite intent to change his domicile from Tennessee to California. As this Court has elucidated, a person "who is mentally incompetent cannot voluntarily change domicile or legal residence because he or she does not have the requisite intent either to abandon the old domicile or to acquire a new one." *See In re Conservatorship of Ackerman*, 280 S.W.3d at 211. In the case at bar, however, the evidence demonstrated that Decedent did not experience a decline in his mental abilities until after he had been domiciled in California for approximately one year.

Although the testimony of all witnesses established that Decedent suffered extensive physical injuries by reason of his automobile accident, there was no proof of any issue with his mental capabilities. Ms. Etcheverry testified that Decedent was mentally alert and capable of making his own decisions until sometime during the summer or fall of 2013. Mr. Rogers similarly opined that his father suffered no mental impairment until approximately the final six months of his life. In addition, Decedent's friends in Tennessee testified that in their conversations with Decedent following his relocation to California, Decedent seemed lucid and normal for at least the first year. The Heirs also presented deposition testimony from Decedent's friends residing outside

---

[4] Although we agree with Ms. Kryder that Decedent's domicile in California cannot be based solely upon his failure to return to Tennessee, we conclude that the trial court was presented with abundant evidence establishing Decedent's intent to abandon Tennessee and adopt California as his domicile.

Tennessee, one of whom had known Decedent since childhood. These witnesses also explained that Decedent appeared lucid and mentally alert during at least the first year following his accident.

Importantly, the Heirs presented the deposition testimony of Dr. Jorge Del Toro, Decedent's physician in California following Decedent's accident and relocation. Dr. Del Toro testified that Decedent manifested "good mental capacity" when he consulted Dr. Del Toro following his relocation to California. Dr. Del Toro opined that Decedent was, at that time, capable of understanding and making the decision to move from one state to another. Dr. Del Toro reported that his typical procedure was to converse with a patient to determine if the individual could respond effectively, have good cognition, and understand the questions being asked and the nature of the conversation. Dr. Del Toro also stated that he did later notice deterioration in Decedent's mental status, but he affirmed that at the time of Decedent's relocation to California, Decedent "seemed to be here of his own free will and was aware he was in California and never made any comments or statements that he wanted to return to where he came from."

The Heirs further presented an affidavit from Dr. Stephen J. Helvie, a California neurologist, who stated that Decedent had become his patient in August 2012, following Decedent's relocation to California. Dr. Helvie reported that he had performed both physical and mental examinations of Decedent, opining that "[Decedent] appeared to have the mental capacity to understand a decision to move from Tennessee to California, and confirmed to me that he was concurrent in that decision."

Based on the totality of the evidence in the record, we conclude that ample proof demonstrated that Decedent had sufficient mental capacity at the time of his move to form the requisite intent to change his domicile to California. We therefore determine Ms. Kryder's issue regarding Decedent's ability to form intent to be without merit. The evidence does not preponderate against the trial court's finding that Decedent intended to change not only his residence, but also his actual domicile, to the state of California in 2012. Ergo, we affirm the trial court's determination that Decedent was domiciled in California at the time of his death, such that original probate of his will was not proper in Tennessee pursuant to Tennessee Code Annotated § 32-2-101.

VI. Ancillary Probate Pursuant to Tennessee Code Annotated § 30-1-103

Ms. Kryder also contends that she should have been allowed to open an ancillary probate based upon Tennessee Code Annotated § 30-1-103, which states in relevant part:

(a) Letters testamentary or of administration may be granted upon the estate of a person who resided, at the time of the person's death, in some other

state or territory of the union, or in a foreign country, by the probate court of any county in this state:

> (1) Where the deceased had any goods, chattels, or assets, or any estate, real or personal, at the time of the person's death, or where the goods, chattels, assets, or estate may be when the letters are applied for;

> (2) Where any debtor of the deceased resides;

> (3) Where any debtor of a debtor of the deceased resides, the debt being unpaid when the application is made; or

> (4) Where any suit is to be brought, prosecuted, or defended, in which the estate is interested.

The trial court determined that "in exercise of its discretion," ancillary probate should not be granted in Tennessee. The court noted that Decedent owned no real or personal property in Tennessee at the time of his death and that "[f]ull authority has been granted to Ms. Etcheverry, by the California probate court, to administer the Decedent's estate." The court also noted that no need for ancillary probate existed based on Ms. Kryder's status as an "alleged debtor" of the Decedent. The Heirs assert that the trial court's decision was appropriate and also point out that the above-quoted statutory language provides that ancillary probate is discretionary rather than mandatory.

We note that Tennessee Code Annotated § 30-1-103 specifically provides that "[l]etters testamentary or of administration <u>may</u> be granted" regarding the estate of a nonresident decedent under certain circumstances. As our Supreme Court has explained: "'May' ordinarily connotes discretion or permission; and it will not be treated as a word of command unless there is something in the context or subject matter of the act or statute under consideration to indicate that it was used in that sense." *Colella v. Whitt*, 308 S.W.2d 369, 371 (Tenn. 1957). Ms. Kryder, although ostensibly acknowledging the discretionary nature of an ancillary probate action, argues that the trial court abused its discretion "by not fully considering the four factors that provide the basis for ancillary jurisdiction." Ms. Kryder contends that three of the four factors were shown to exist because (1) Ms. Etcheverry claimed an interest in the property of Ms. Kryder in the federal court lawsuit, (2) Ms. Etcheverry claimed that Ms. Kryder was a debtor of the Decedent, and (3) the estate is an interested party in the federal court lawsuit pending in Tennessee.

17

We emphasize the following standard of review with regard to an alleged abuse of discretion by the trial court:

> Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d [22,] 42 [(Tenn. 2005)].

*Lee Med., Inc. v. Beecher*, 312 S.W.3d at 524-25.

Applying this standard of review to the discretionary decision at bar, we conclude that the trial court did not abuse its discretion in declining to open an ancillary probate proceeding in Tennessee based on the evidence presented. The trial court clearly considered the applicable factors listed in Tennessee Code Annotated § 30-1-103, correctly determining that Decedent did not maintain ownership of any property in Tennessee at the time of his death and that Decedent's estate was being probated in California. Evidence existed in the record demonstrating that Ms. Kryder had taken steps to pursue a claim against the Decedent's estate in the California probate action. Moreover, as the court found, there was no reason to allow ancillary probate based on Ms. Kryder's alleged status as a debtor of Decedent. Ms. Etcheverry, who was fully aware of the existence of any alleged debt owed by Ms. Kryder, as well as the pending federal lawsuit, had chosen to probate Decedent's estate in California. We therefore determine that (1) the factual basis for the trial court's decision is properly supported by evidence in the record, (2) the trial court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) the trial court's decision was within the range of acceptable alternative dispositions. *See id.* Accordingly, we find Ms. Kryder's issue regarding ancillary probate to be unavailing.

## VII. Rule 11 Sanctions

Ms. Kryder's remaining issues focus on the trial court's decision to award sanctions against her and her counsel pursuant to Tennessee Rule of Civil Procedure 11. Ms. Kryder asserts that the trial court erred in granting sanctions against her personally, even though she is a licensed attorney, because she was merely a party represented by counsel in this matter. Ms. Kryder also postulates that the court erred in awarding sanctions against one of her attorneys, Ms. Haude, who allegedly filed no pleadings and had no prior notice of the motion pursuant to Rule 11's "safe harbor" requirements. According to Ms. Kryder, her post-trial motions seeking amendment of a prior court order were not frivolous. Ms. Kryder further maintains that the trial court should have awarded sanctions in her favor because of the Heirs' counsel's act of seeking sanctions against her personally.

### A. Award of Sanctions Generally

Following entry of the trial court's February 10, 2015 order finding that Decedent was domiciled in California, Ms. Kryder, through counsel, filed a "Renewed Motion for Making Findings of Fact and Conclusions of Law" on March 9, 2015, asserting that Ms. Kryder had established a presumption of Decedent's domicile in Tennessee and that the Heirs had failed to demonstrate that Decedent possessed the intent to change his domicile to California. Ms. Kryder concomitantly filed a motion in support of her "Renewed Petition for Ancillary Probate," arguing that she had recently discovered the filing of a lien *lis pendens* in Giles County, which provided additional support for opening an ancillary probate action in Tennessee.

The Heirs posit that Ms. Kryder filed post-trial motions "as a means of delaying payment of discretionary costs, extending the deadline for filing a notice of appeal, further harassing [the Heirs], and adding to the attorney fees and expenses they must incur in this matter." The Heirs contend that despite Ms. Kryder's allegations of new evidence, none was brought forth. According to the Heirs, the lien *lis pendens* referred to in Ms. Kryder's "renewed petition" had been of record since before the trial in this matter.

Following their receipt of the post-trial motions referenced above, the Heirs' counsel sent a letter to Ms. Kryder's counsel, Mr. Beam, on March 16, 2015, seeking withdrawal of the allegedly improper documents. Subsequently, the Heirs' counsel transmitted a second letter to Mr. Beam requesting withdrawal of the documents on March 23, 2015, attaching a copy of the proposed Rule 11 motion. Because Ms. Kryder's post-trial pleadings were not withdrawn, the Heirs filed a motion seeking sanctions pursuant to Rule 11 on April 17, 2015. Following objection by Ms. Kryder's

counsel regarding noncompliance with Rule 11's "safe harbor" provision, the first motion was withdrawn. The Heirs then refiled the Rule 11 motion seeking sanctions on June 8, 2015. Ms. Kryder thereafter filed a motion seeking Rule 11 sanctions against the Heirs' counsel, related to the filing of the June 8, 2015 motion.

Tennessee Rule of Civil Procedure 11.02 provides:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denial of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Furthermore, Rule 11.03 states:

If, after notice and a reasonable opportunity to respond, the court determines that subdivision 11.02 has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision 11.02 or are responsible for the violation.

(1) How Initiated.

(a) By Motion.  A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision 11.02.  It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.  If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.  Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

* * *

(2) Nature of Sanctions; Limitations.  A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.  Subject to the limitations in subparagraphs (a) and (b), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(a) Monetary sanctions may not be awarded against a represented party for a violation of subdivision 11.02(2).

* * *

(3) Order.  When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

In this action, the trial court entered an order regarding the Rule 11 motions on September 21, 2015, stating in pertinent part:

This case involves a Petition seeking ancillary probate of the Rogers estate in Tennessee.  A trial was heard on the merits on December 30, 2014, and January 15, 2015.  Upon conclusion of the trial the Court made an oral

21

ruling, including specific findings of fact and conclusions of law. Additionally, the Court announced it would entertain additional findings of fact and conclusions of law from each of the attorneys. The Court was anxious to enter a final order.

Competing final orders were timely submitted. On February 10, 2015, the Court executed the Final Judgment and Order submitted by Respondents, finding the Order was consistent with the evidence and the Court's oral ruling.

On February 13, 2015, the parties were back in Court with additional Findings of Fact and Conclusions of Law submitted on behalf of Petitioner, as well as a Motion for Discretionary Costs filed on behalf of Respondents. The Court announced that it was satisfied with the Final Judgment and Order executed by the Court and entered on February 10, 2015. Respondents' Motion for Discretionary Costs was granted.

On February 13, 2015, counsel for Petitioner announced that he may file further motions seeking the Court's approval of the Findings of Fact and Conclusions of Law filed on behalf of Petitioner. The Court clearly discouraged any subsequent filings seeking further review or consideration.

There is before the Court a Final Judgment and Order entered February 10, 2015. Either party may now perfect an appeal.

Next, Petitioner filed Motions in support of a Renewed Petition for Ancillary Probate, Memorandum in support thereof, and a Renewed Motion for Findings of Fact and Conclusions of Law, and set a hearing for June 12, 2015. The Court once again denied Petitioner's Motions.

The first Rule 11 Motion for Sanctions was filed on behalf of Respondents. Petitioner then filed her motion. The motions were heard on September 11, 2015.

The Court finds as follows:

Respondents' Rule 11 Motion is well taken and is granted. Specifically, the Court finds that pursuant to Rule 11.02 (1), the Court finds that all pleadings filed after the hearing on February 13, 2015, on behalf of Petitioner are improperly filed to harass, to cause unnecessary delay, and to increase the cost of litigation. It is Petitioner's position that the pleadings

are simply filed as routine post-judgment pleadings, just as in any litigation. The Court disagrees. It is abundantly clear to the Court that the continued pleadings were totally without merit and were filed for harassment, to create delay and to increase the cost of litigation.

Pursuant to Rule 11.02 (2), the Court finds that all pleadings filed after February 13, 2015, on Petitioner's behalf, are frivolous and totally without merit. There was never presented to the Court any "newly found evidence" which was contrary to the Court's ruling or which merited further consideration by the Court.

The Court denies Petitioner's Rule 11 Motion, finding it is totally without any merit and is filed in retaliation of Respondents' motion.

As this Court has previously explained with regard to the trial court's grant of a Rule 11 motion for sanctions:

We review a trial court's ruling on a Rule 11 motion under an abuse of discretion standard. *Hooker v. Sundquist*, 107 S.W.3d 532, 535 (Tenn. Ct. App. 2002). An abuse of discretion occurs when the decision of the lower court has no basis in law or fact and is therefore arbitrary, illogical, or unconscionable. *Id.* (citing *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000)). Our review of Rule 11 decisions is governed under this deferential standard since the question of whether a Rule 11 violation has occurred requires the trial court to make highly fact-intensive determinations regarding the reasonableness of the attorney's conduct. *Id.* We review the trial court's findings of fact with a presumption of correctness. *Id.*; Tenn. R. App. P. 13(d).

* * *

The courts are to apply a standard of "objective reasonableness under the circumstances" when determining whether conduct is sanctionable under Rule 11. *Hooker v. Sundquist*, 107 S.W.3d at 536 (citing *Andrews* [*v. Bible*], 812 S.W.2d [284,] 288 [(Tenn. 1991)]). "Sanctions are appropriate when an attorney submits a motion or other paper on grounds which he knows or should know are without merit, and a showing of subjective bad faith is not required." *Id.* (quoting *Boyd v. Prime Focus, Inc.*, 83 S.W.3d 761, 765 (Tenn. Ct. App. 2001)). However, when deciding whether to impose sanctions under Rule 11, the trial court should consider all the circumstances. *Id.* "[T]he trial judge should consider not

only the circumstances of the particular violation, but also the factors bearing on the reasonableness of the conduct, such as experience and past performance of the attorney, as well as the general standards of conduct of the bar of the court." *Andrews*, 812 S.W.2d at 292 n.4.

*Brown v. Shappley*, 290 S.W.3d 197, 200, 202-03 (Tenn. Ct. App. 2008). In addition, "a court imposing sanctions must describe the conduct it determines violates Rule 11.02 and explain the basis for any sanction it imposes. This directive is mandatory; failure to describe the conduct determined to constitute a violation or to explain the basis for the sanction imposed is grounds for reversal." *Lindsey v. Lambert*, 333 S.W.3d 572, 578 (Tenn. Ct. App. 2010) (internal citations omitted).

Following our thorough review of the record, we conclude that the trial court did not abuse its discretion by awarding sanctions to the Heirs pursuant to Tennessee Rule of Civil Procedure 11. The court fully "describe[d] the conduct it determine[d] violate[d] Rule 11.02 and explain[ed] the basis" for the sanctions it imposed. *See id*. As the court explained, Ms. Kryder's counsel had previously advanced an argument seeking additional findings of fact and conclusions of law following entry of the court's judgment, but the court denied the motion, stating that the final order sufficiently and correctly reflected its findings and conclusions. The court noted that although "counsel for Petitioner announced that he may file further motions" regarding additional findings and conclusions, the court cautioned that no relief would be granted on this issue. Notwithstanding the court's admonishment, Ms. Kryder's counsel subsequently filed the "renewed" motion seeking additional findings and conclusions.

Ms. Kryder's counsel similarly filed a "renewed" petition for ancillary probate following the trial court's entry of a judgment denying ancillary probate. Ms. Kryder's counsel stated that "newly discovered evidence" in the form of a lien *lis pendens* supported her "renewed" motion. However, as the trial court subsequently found, no actual new evidence was brought forth. In fact, Ms. Kryder had previously testified at trial regarding the existence of the lien *lis pendens* as support for her petition for ancillary probate.

The trial court ultimately determined: "It is abundantly clear to the Court that the continued pleadings were totally without merit and were filed for harassment, to create delay and to increase the cost of litigation." Based upon our review of the record, we conclude that the trial court's determination on this issue did not apply an incorrect legal standard, that the court did not reach an illogical or unreasonable decision, and that the court did not base its decision on a clearly erroneous assessment of the evidence. *See Lee Med., Inc.*, 312 S.W.3d at 524. We therefore affirm the trial court's determination that a sanctionable violation of Rule 11 had occurred.

24

## B. Award of Sanctions Against Ms. Kryder

Ms. Kryder challenges the trial court's award of sanctions against her personally, even though she is a licensed attorney, because she was a party represented by counsel in this matter. The Heirs assert that there is precedent for imposing sanctions on a "sophisticated, non-signing party" such as Ms. Kryder. We agree. *See Alside Supply Ctr. of Knoxville v. Smith Heritage Siding Co., Inc.*, No. 03A01-9702-CH-00069, 1997 WL 414982, at *3 (Tenn. Ct. App. July 25, 1997) ("We believe the use of an objective standard for [imposing sanctions against] a sophisticated, non-signing party is appropriate."). Moreover, this Court also held that the same standard would be applied with regard to the imposition of sanctions against a non-sophistocated, non-signing party. *See Project Creation, Inc. v. Neal*, No. M1999-01272-COA-R3-CV, 2001 WL 950175, at *10 (Tenn. Ct. App. Aug. 21, 2001) (concluding that the objective reasonableness test would be applied to a non-signing party, which would allow the trial court "to consider a party's lack of legal sophistication when determining whether to impose sanctions."). *See also Al-Haddad v. Ritter*, No. 01A01-9608-CV-00369, 1997 WL 44389, at *2 (Tenn. Ct. App. Feb. 5, 1997).

In this case, Ms. Kryder is a sophisticated party, familiar with the legal system and with Tennessee Rule of Civil Procedure 11. The record contains evidence demonstrating that Ms. Kryder was personally involved in the prosecution of her claims and that she was clearly knowledgeable regarding the litigation strategy pursued by her attorneys. In determining whether sanctions can be awarded against her, Ms. Kryder's legal sophistication may be properly considered.

We note, however, that the trial court's order regarding the motions filed pursuant to Tennessee Rule of Civil Procedure 11 awarded sanctions for violations of both Rules 11.02(1) and 11.02(2). Tennessee Rule of Civil Procedure 11.03(2)(a) expressly provides: "Monetary sanctions may not be awarded against a represented party for a violation of subdivision 11.02(2)." Accordingly, although the trial court could award sanctions against Ms. Kryder personally based on a violation of Rule 11.02(1), it could not award sanctions against Ms. Kryder personally based on a violation of Rule 11.02(2). For this reason, we must vacate the award of sanctions against Ms. Kryder individually and remand this issue to the trial court for a determination of the proper amount of sanctions to be awarded against Ms. Kryder solely pursuant to Rule 11.02(1). We expressly determine, however, that Ms. Kryder's issue regarding the assessment of sanctions against her personally pursuant to Rule 11.02(1) is without merit.[5]

---

[5] This determination renders moot Ms. Kryder's argument that she should have received an award of Rule 11 sanctions against the Heirs' counsel for their seeking Rule 11 sanctions against Ms. Kryder personally.

C. Award of Sanctions Against Attorney Haude

Ms. Kryder further asserts that the trial court erred by awarding sanctions against one of her attorneys, Ms. Irene Haude, who allegedly filed no pleadings and had no prior notice of the Tennessee Rule of Civil Procedure 11 motion. In support of this argument, Ms. Kryder relies on Rule 11's "safe harbor" requirements, about which this Court has previously explained:

> The emphasized portion of Rule 11.03(1)(a) is the Rule's 21-day "safe harbor" provision. *Mitrano v. Houser*, 240 S.W.3d 854, 862 (Tenn. Ct. App. 2007). This provision serves dual purposes. *Id*. First, it provides an attorney or party acting pro se with "notice and fair warning that an adversary is proposing seeking sanctions." *Id*. Second, it deters frivolous, unsupported, or otherwise improper pleadings from being filed with the court. *Id*.

> This Court has noted that the procedures established in Rule 11.03 are clear, unambiguous and mandatory. *Id*. Accordingly, we will reverse an order of sanctions where the moving party has not complied with the Rule's safe harbor provisions. *Id*.

*Brown*, 290 S.W.3d at 202. In this matter, the record demonstrates that pursuant to Rule 11's safe harbor requirements, the Heirs' counsel sent letters and a copy of the proposed Rule 11 motion to Mr. Beam, as counsel for Ms. Kryder, at the law firm's address. Ms. Haude is also a member of that law firm. As such, we do not determine that a violation of the safe harbor provisions occurred.

According to our thorough review of the record, we further determine that although Ms. Haude did not personally sign the improper pleadings at issue, she did later advocate those pleadings. Both pleadings were signed by Mr. Beam, and Ms. Haude's name does not appear thereon. However, Ms. Haude appeared at the September 11, 2015 hearing concerning the competing Rule 11 motions, presenting argument that the improper pleadings were not frivolous.

As previously explained, Rule 11.02 provides that an attorney makes certain representations to the court by "signing, filing, submitting, or later advocating" a pleading. At the September 2015 hearing, Ms. Haude specifically argued to the trial court:

> [I]t is clear that the documents complained about are what normally would be considered posttrial motions. In fact, everybody has referred to them as

a motion to alter or amend or a motion for a new trial which is a classic posttrial motion.

Now, by their very nature, posttrial motions are motions that revisit that which the Court has ruled on. In some cases, they get granted. In many cases, they get denied. But the mere fact that a posttrial motion is denied does not mean that the motion is frivolous.

* * *

[T]he posttrial motions have a legitimate purpose of setting up the issues on appeal and giving the Court an opportunity to change its mind if it so desired.

In response to this argument, the trial court stated:

But, you know, Ms. Haude, you were involved from the get-go in this case in my rulings. And early on, contrary to what I – I don't think I've ever told a lawyer before [that] I think an appeal would be frivolous. Early on, I said that. Everything in my mind that's been filed on behalf of Ms. Kryder beyond that has been 100 percent frivolous.

We determine that inasmuch as Ms. Haude "later advocate[ed]" for the post-trial motions, despite the trial court's cautionary statements made during more than one hearing, the court maintained a sufficient basis for assessing joint liability for Rule 11 sanctions against Ms. Haude. We therefore affirm the trial court's judgment with regard to Rule 11 sanctions against Ms. Haude as well as Mr. Beam and the respective law firm.

## VIII. Frivolous Appeal

Finally, the Heirs assert that Ms. Kryder's appeal is frivolous such that this Court should award attorney's fees and expenses to them pursuant to Tennessee Code Annotated § 27-1-122. As this Court has previously explained:

Parties should not be forced to bear the cost and vexation of baseless appeals. Accordingly, in 1975, the Tennessee General Assembly enacted Tenn. Code Ann. § 27-1-122 to enable appellate courts to award damages against parties whose appeals are frivolous or are brought solely for the purpose of delay. Determining whether to award these damages is a discretionary decision.

A frivolous appeal is one that is devoid of merit, or one that has no reasonable chance of succeeding. Thus, an appeal in which the reviewing court's ability to address the issues raised is undermined by the appellant's failure to provide an adequate record is deemed frivolous because it has no reasonable chance of succeeding.

*Young v. Barrow*, 130 S.W.3d 59, 66-67 (Tenn. Ct. App. 2003) (internal citations omitted). We determine that Ms. Kryder's appeal was not so completely devoid of merit as to be deemed frivolous. We therefore deny the Heirs' request for attorney's fees on appeal.

IX. Conclusion

For the foregoing reasons, we vacate that portion of the trial court's judgment awarding sanctions against Ms. Kryder personally and remand that issue to the trial court for a determination of the proper amount of sanctions to be awarded against Ms. Kryder solely pursuant to Rule 11.02(1). We affirm the trial court's judgment in all other respects. This case is remanded to the trial court for further proceedings consistent with this opinion. Costs on appeal are taxed to the appellant, Patricia Porter Kryder.

_____
THOMAS R. FRIERSON, II, JUDGE